## SIMS & McQUEEN v. PRYOR & SAXON.

1. P & S gave a receipt, acknowledging that they had received from S & M, all their books of account, notes, &c. and stock of goods, valued at twelve thousand dollars; also their right, title, &c., to certain real estate, valued at three thousand dollars, "for the payment of the following notes," the amount and dates, and time when due, are particularly stated, the aggregate sum of which is nearly twelve thousand dollars: *Held*, that the writing did not indicate an absolute sale of the books of account, &c., but showed that, they were received as a security for the payment of the notes of which P & S, were previously in possession; that it was competent for S & M, to show that P & S, had realized a sum more than sufficient for that purpose, and to recover the excess.

2. It is not error in a court to refuse to admit proof which is merely affirmative of the legal interpretation of a writing adduced as evidence; if either party desire an opinion from the court, as to the meaning or effect of the paper, it should be sought by a prayer for instructions to the jury, or in some other mode equally direct, unless the court by its decision renders this course of procedure unnecessary.

WRIT of error to the Circuit Court of Autauga.

This was an action of assumpsit, by the plaintiffs in error, against the defendants. The declaration is drawn without much regard to technical precision, and contains counts for goods, wares, and merchandize, sold and delivered; land sold and conveyed, and "promissory notes, books of account, vouchers, bills, bonds, accounts, claims, papers and claims in action due from divers persons, amounting in all to the sum of fifteen thousand dollars." The cause was tried on the plea of *non-assumpsit*. On the trial, the plaintiffs excepted to the ruling of the presiding judge, from which it appears, that the following writing was adduced, viz:

"Syllacogga, Oct. 17, 1837.

Rec'd from Sims & McQueen, all their accounts, books, papers, vouchers and claims at and in the store-house at Syllacogga, valued at four thousand dollars; also their stock of goods at the same place, valued at four thousand dollars; also their books of account, notes, vouchers and stock of goods at Tallashatchey, valued at four thousand dollars; also their right, title and interest to all the real estate bought by the said Sims & McQueen from

E. C. Wilson and Charles Cottingham, at Syllacogga, valued at three thousand dollars, for the payment of the following notes, viz: one for $1087 33-100, due 5th May, 1837; one for $1087 33-100, due 5th Feb. 1837; one for $811 9 1-100, due 2d Jan.1837; one for $150, due 22d July, 1837; one for $2000, due 1st September, 1837; one for $6017 88-100, due 1st February, 1838; one for $107 94-100, due 24th January, 1837, and one for $425, due 21st Sept. 1837.

JAMES BRADFORD, Agent<br>for Pryor & Saxon, Assignees<br>of Felder & Bradford."

The plaintiffs introduced proof tending to show, that James Bradford was the agent of the defendants, and in that character purchased of the plaintiffs, the goods, &c., mentioned in the writing set out above; they also proposed to prove, that at the time of making the writing, it was agreed that the defendant was on a settlement of the notes described therein, to pay to the plaintiffs any surplus which might remain of the notes, accounts and other property then transferred. To the admission of this last evidence, the defendants objected, and their objection was sustained, the court deciding that the writing could not be explained, by evidence showing that it was verbally agreed, at the time it was made, that the notes, &c., remaining, or their proceeds after satisfying the debts in consideration of which the transfer was made, were to be returned or paid to the plaintiffs. A verdict was returned for the defendants, and thereupon a judgment was rendered.

L. KENNEDY, for the plaintiffs in error.
PRYOR, for the defendants.

COLLIER, C. J.—This cause was submitted without argument or brief, but we infer that the ground on which the circuit judge rejected the evidence offered by the plaintiffs was, because he supposed the writing which had been adduced, established an absolute sale of the goods, &c., and could not be contradicted or varied by " parol contemporaneous evidence." The terms employed in the paper are not those which are usual in a bill of sale, or other instrument, by which one person divests himself of the title to property in favor of another. It merely acknowledges

that the defendants have received of the plaintiffs, books of accounts, notes, &c., goods and lands, stating the places where they were, and the estimated value of each of these objects, at the respective places, amounting in the aggregate to the sum of fifteen thousand dollars. The purpose for which this property was transfered to the defendants, was the payment of notes, amounting to about twelve thousand dollars. There is no stipulation that the plaintiffs are to be discharged from liability to pay the notes, if the defendants should not realize a sufficient sum for that purpose. Again, the estimate placed upon the property put under defendants control, seems to have been merely conjectural, without any regard to accuracy, as indicated by the manner in which it is stated; nor does the writing provide for, or contemplate a conveyance of the real estate to the defendants. All these circumstances seem to us to lead to the conclusion that the parties did not regard the transaction as a sale, or if they did, they have expressed themselves in terms from which no other inference can be drawn, than, that the intention was to furnish a security for the payment of the notes. This is the construction which results from the terms used, when understood in their plain, ordinary and popular sense. Thus interpreted, the writing would not be contradicted, varied or explained, or made to indicate a purpose different from what the law would deduce from the interpretation we have given it, by the admission of the evidence excluded.

The implied agreement on the part of the defendants, is to collect the accounts, &c., sell the goods &c., and appropriate the money to the payment of the notes intended to be provided for, and after the notes were paid, to return to the plaintiffs, or their order *on demand*, whatever surplus might remain in their hands. According to the case of Brooks and Brown v. Maltbie, [4 Stew. & P. Rep. 96,] the inference from the writing is so conclusive, that it was intended merely to evidence a security for the payment of debts, instead of an actual payment, as to exclude proof to show, that if there was a balance unpaid, it could not be recovered after an appropriation of the proceeds of the property transferred to the defendant. But the bill of exceptions does not inform us why it became necessary or proper to introduce the evidence referred to therein; nothing more is said, than it was offered and excluded; and as it was merely affirmative of what the law itself inferred from the writing, we cannot conceive how the

plaintiffs could have been injured by its exclusion. Is it allowable for a party who produces a written contract which is not disputed, to prove by witnesses that the contract was such as it imports on its face? Is the court obliged to submit to the unnecessary infliction which such evidence would impose on its time; or can the party be prejudiced by the rejection? These questions we think must receive a negative response. If the plaintiffs had offered evidence to show what surplus was left in defendants hands after the debts were paid, or if the court had charged the jury that the writing shewed a sale, and that the defendants were not liable, then the legal question sought to be raised would be fairly presented. But such is not the posture of the case, and we must decide it upon the record.

The remark of the court, that the writing could not be explained, by showing that it was verbally agreed the defendants should be liable for any surplus remaining in their hands after the debts were paid, can have no influence upon the decision which was made. It only seems to show what was the ground of the opinion of the circuit judge, and nothing more. It could not have prejudiced the plaintiffs case before the jury, for it was not addressed to them. Nor was it a formal adjudication of the legal principle it asserts, but it was only an erroneous reason for a correct conclusion, which it has been often held, will not authorise the reversal of a judgment.

If the plaintiff, could have shown a surplus in the defendants hands after the payment of the debts intended to be provided for, they should, as already remarked, have offered evidence for that purpose. In the absence of such proof, it cannot be assumed, that they were prepared with, and would have adduced it, but for the remark of the judge, to which we have referred; and having failed to offer such evidence, it is impossible to know, or conjecture that, that remark was productive of injury.

From what we have said, it results that there is no error in the record, and the judgment of the circuit court is consequently affirmed.